ZUZAN, Appellant,

v.

SHUTRUMP, Appellee.

[Cite as *Zuzan v. Shutrump*, 155 Ohio App.3d 589, 2003-Ohio-7285.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 03 MA 50

Decided Dec. 17, 2003.

590

Matthew Giannini, for appellant.

Larry Wilkes, for appellee.

VUKOVICH, Judge.

{¶ 1} Plaintiff-appellant John Zuzan appeals from the judgment of the Mahoning County Common Pleas Court that granted summary judgment in favor of defendant-appellee Richard Shutrump. The issue before us is whether the trial court erroneously determined as a matter of law that a cracked stoop on Shutrump's property was an open-and-obvious danger that thereby relieved Shutrump from any duty to protect Zuzan from it. For the reasons provided below, the judgment of the trial court is affirmed.

## STATEMENT OF FACTS

{¶ 2} Zuzan and his helper, John Green, were installing carpet at the Shutrump house in Youngstown, Ohio, on the afternoon of November 23, 1999. After installation was almost completed, Zuzan carried out one of the tools, a power stretcher, to the van. Upon exiting the house through the front door, Zuzan stepped onto the stoop, which had a crack in it. Due to the unevenness of the crack, Zuzan fell, and the power stretcher hit his left foot. As a result of the injury to his left foot, Zuzan was instructed to wear a soft brace and stay off his feet. This resulted in Zuzan missing approximately nine months of work.

{¶ 3} Due to the injuries, Zuzan filed a negligence suit against Shutrump in June 2001. After discovery, Shutrump moved for summary judgment, claiming that the cracked stoop was an open-and-obvious hazard from which Shutrump owed no duty to protect Zuzan. The trial court granted the motion. Zuzan timely appeals, raising one assignment of error.

## ASSIGNMENT OF ERROR

{¶ 4} "The trial court erred in rendering summary judgment for defendant when doing so arises out [sic] the trial [sic] determines the existence of a genuine issue of material fact based solely upon its determination of credibility of witnesses."

{¶ 5} An appellate court reviews a trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 671

N.E.2d 241. Summary judgment is properly granted when (1) no genuine issues as to any material fact exist; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The evidence must be viewed in the light most favorable to the nonmoving party. Id.

{¶ 6} In order to establish actionable negligence, Zuzan must show the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271. It is undisputed that Zuzan was a business invitee and Shutrump was the owner of the premises. The duty to an invitee by the owner of the premises is to exercise ordinary and reasonable care for the safety and protection of the invitee. *Cassano v. Antenan–Stewart, Inc.* (1993), 87 Ohio App.3d 7, 9, 621 N.E.2d 826, citing *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 359, 12 O.O.3d 321, 390 N.E.2d 810. This duty includes a responsibility to warn invitees of latent or concealed defects of which the owner has, or should have, knowledge. *Green v. China House* (1997), 123 Ohio App.3d 208, 211, 703 N.E.2d 872. However, an owner has no duty to protect invitees from conditions that either are known to the invitee or are so obvious and apparent that the invitee may reasonably be expected to discover and protect himself against. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus. This rationale is based on principles that an open-and-obvious danger is itself a warning. *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 597 N.E.2d 504.

{¶ 7} The open-and-obvious doctrine is based upon the invitee's knowledge of the danger. *Sidle,* 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589. When the invitee admits to knowing of the danger, summary judgment is easily granted. Clearly, the danger is open and obvious when the invitee admits to having had actual knowledge of the danger prior to being injured by that danger. In the case at hand, while Zuzan described the crack as "a pretty good size crack," he states that he did not see the crack prior to falling. Thus, the case at hand is not a situation where the invitee admitted to knowing of the danger prior to being injured.

{¶ 8} However, Shutrump argues that because of the nature of this crack, it is open and obvious. The open-and-obvious doctrine states that the owner has no duty when the condition is so obvious that the invitee may reasonably be expected to discover it. Id. This leads to the conclusion that some dangers are

just so apparent that when an invitee encounters them, it is expected that he knows of them.

{¶ 9} Recently the Ohio Supreme Court, after viewing photographs of a shopping-cart guardrail, found as a matter of law that the rail in question was visible to all persons entering and exiting the store. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 16. As such, it concluded that the rail was an open-and-obvious danger. Id. (noting that *Armstrong* admitted in his deposition that when he entered the store, nothing was obstructing his view prior to the fall and if he had been looking down, he would have seen the guardrail).

{¶ 10} Shutrump urges this court to follow the Ohio Supreme Court's lead in *Armstrong* and find that the crack in the stoop was open and obvious. The only description of this crack in the record is that it is "a pretty good size crack" that caused unevenness in the stoop. This description of the crack is vague. No evidence was presented to the trial court of the length of the crack, the depth of the crack, or whether if upon looking at the stoop one could tell where the crack was. Thus, we are placed in a different position than the *Armstrong* court. From this description alone, neither our court nor the trial court could conclude, as a matter of law, that the crack was open and obvious.

{¶ 11} Therefore, we turn our attention to whether the description taken in conjunction with the prior usage of the step can constitute knowledge of the danger. Shutrump argues that the number of times (i.e., four to ten times) Zuzan walked across the stoop shows that he had knowledge of the crack. Zuzan contends that in his deposition he never admitted to entering or exiting through this door except when he fell and, therefore, a genuine issue of material fact exists as to whether he walked across the cracked stoop prior to his fall. It is therefore his contention that for purposes of summary judgment, the number of times he went over the stoop cannot be used to show that he had knowledge of the condition, and accordingly summary judgment could not be granted based upon this imputed knowledge.

{¶ 12} Courts have stated that knowledge may be shown by prior usage. See *Provateare v. Hausman Co.* (Apr. 29, 1999), 8th Dist. No. 74061, 1999 WL 258194 (prior usage constitutes knowledge); *Wilson v. Red Roof Inns, Inc.* (Dec. 11, 1997), 8th Dist. No. 72041, 1997 WL 764755 (recognizing that prior usage may constitute knowledge but criticizing the *Shaw* holding for adding the element that knowledge of the condition must be essential to the success of the prior usage); *Shaw v. Cent. Oil Asphalt Corp.* (1981), 5 Ohio App.3d 42, 44, 5 OBR 45, 449 N.E.2d 3 (stating that knowledge of the dangerous condition may be imputed to the invitee because of the number of times the invitee encountered the danger if knowledge of the condition was essential to the success of the prior usage). The

Supreme Court has stated that generally a party cannot claim that a defect was so insubstantial so as to go unnoticed upon entering a premises and then conversely claim that the condition was unreasonably dangerous so as to impose liability for a fall occurring upon leaving the premises. *Raflo v. Losantiville Country Club* (1973), 34 Ohio St.2d 1, 63 O.O.2d 1, 295 N.E.2d 202, paragraph one of the syllabus. Therefore, if the record reveals that Zuzan traversed this stoop prior to falling, he cannot prevail on a claim that the crack in the stoop was insubstantial when he traversed across it but that it was unreasonably dangerous when he fell on it upon leaving the premise.

{¶ 13} During the deposition, Zuzan was asked which door he used to enter the Shutrump home. Zuzan responded that he thought he used the front door. Then a few lines later Zuzan stated that he did not remember which door he used, but stated that typically he uses "a kitchen door or something like that." Zuzan was asked again whether he knew which door he went to and he responded that he did not know and therefore he could not answer the question. Zuzan was also asked how many trips he made to the van to get the necessary equipment. He answered that probably three or four and then he added four is the normal amount of trips. Attached to Shutrump's motion for summary judgment is the affidavit of Kimberly Price, who lived with Shutrump at the time of the incident and who opened the door and let Zuzan in the house on the day of the incident. The affidavit states that Zuzan crossed the stoop and entered the home through the front door. Price also states that Zuzan went in and out of the front door at least ten times that day.

{¶ 14} Given the deposition testimony and the affidavit, it was not erroneous for the trial court to conclude that Zuzan walked across the cracked stoop at least four times before falling on the crack. Zuzan's testimony does not support the argument that he walked upon the cracked stoop only when he fell, but rather the testimony supports the notion that he cannot remember what door he used to enter and exit the house. Given that, Price's affidavit stating that Zuzan entered through the front door is not contradictory to Zuzan's testimony and is in fact the only evidence of what door Zuzan used that day. Furthermore, while Zuzan and Price do not agree on how many times Zuzan entered and exited the house before falling, the evidence would support at least four times. Consequently, the number of times Zuzan walked across the stoop formed imputed knowledge and, thus, summary judgment was appropriate.

{¶ 15} Zuzan additionally argues that, even if the cracked stoop was open and obvious, attendant circumstances existed to contribute to the fall. Attendant circumstances are attractions or distractions that divert or obscure the attention of the pedestrian, thereby significantly enhancing the danger of the defect and contributing to the fall. Attendant circumstances are such that it would come to the attention of a reasonable invitee in the same circumstance and

reduce the degree of care that an ordinary person would exercise. *Huey v. Neal,* 152 Ohio App.3d 146, 2003-Ohio-391, 787 N.E.2d 23. "[A]n attendant circumstance is the circumstance which contributes to a fall and a circumstance which is beyond the control of the injured party." *Backus v. Giant Eagle* (1996), 115 Ohio App.3d 155, 158, 684 N.E.2d 1273. Examples of possible attendant circumstances include heavy vehicular or pedestrian traffic in the vicinity of the sidewalk, poor lighting that causes shadows to be cast over the sidewalk, or a foreign article or substance on the sidewalk. *Hudak v. 510 Gypsy Lane, Inc.* (Mar. 26, 1999), 11th Dist. No. 98-T-0129, 1999 WL 1499505.

{¶ 16} Zuzan claims that in this situation carrying the heavy carpet and machines is the attendant circumstance. He states that he would not be watching where he was stepping but rather would be making sure not to bump or scratch any of the walls. Carrying heavy or awkward things is not a typical attendant circumstance. If the situation at hand is compared to a situation where there is heavy vehicular and pedestrian traffic, it becomes more apparent that carrying heavy carpet into a house is not an attendant circumstance. Heavy vehicular and pedestrian traffic is an attendant circumstance because when a person is walking across the road the person's attention is diverted from looking at the ground he is walking on to looking to ensure that he does not get hit by a car or to ensure that he does not bump into another person. In carrying heavy carpet, while a person would be watching to ensure that walls are not scratched, presumably the person is more aware of the surroundings because he is carrying heavy materials over a step in an area he is unfamiliar with. At some point the person is going to have to look down to ensure that he is stepping up or down at the right time. Moreover, to ensure that the walls will not be scratched, the person would be more cautious of where they are walking to ensure that he or she do not trip and fall into a wall. Therefore, carrying heavy materials in this circumstance is not an attendant circumstance.

{¶ 17} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

GENE DONOFRIO, J., concurs.

DEGENARO, J., dissents.

DEGENARO, Judge, dissenting.

{¶ 18} I must dissent from the majority's judgment because there is a genuine issue of material fact regarding whether the attendant circumstances of carrying heavy carpet and machines over a stoop would prevent the discovery of a dangerous condition. The majority concludes that Zuzan should have known of

the crack in the stoop because he passed over it a few times before he tripped on it while discounting the fact that he was carrying heavy carpet and equipment every time he passed over the stoop. Normally, questions regarding the existence of an unreasonably dangerous condition or attendant circumstances are best left for the trier of fact. There is no reason to take those questions from the trier of fact in this case. Accordingly, the trial court improperly granted summary judgment to Shutrump. The judgment of the trial court should be reversed and this cause remanded for further proceedings.

{¶ 19} As the majority states, the owner of a property has the duty to warn a business invitee, like Zuzan, of latent or concealed defects, but has no duty to warn of defects that are so obvious or apparent that the invitee may reasonably be expected to discover the defect. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus; *Green v. China House* (1997), 123 Ohio App.3d 208, 211, 703 N.E.2d 872. A property owner is not liable if the invitee knows of a dangerous condition and prior usage of property with an unreasonably dangerous condition may show knowledge of that condition. *Raflo v. Losantiville Country Club* (1973), 34 Ohio St.2d 1, 63 O.O.2d 1, 295 N.E.2d 202, paragraph two of the syllabus; *Shaw v. Cent. Oil Asphalt Corp* (1981), 5 Ohio App.3d 42, 44, 5 OBR 45, 449 N.E.2d 3.

{¶ 20} But although prior usage may show knowledge of a dangerous condition, there are times when something can distract an invitee from noticing that condition. These attendant circumstances can "divert or obscure the attention of the pedestrian, thereby significantly enhancing the danger of the defect and contributing to the fall." Opinion at ¶ 15. Attendant circumstances are any distraction that would come to someone's attention in the same circumstances and reduce the degree of care an ordinary person would exercise at the time. *Flower v. K–Mart Corp.* (1998), 130 Ohio App.3d 617, 620, 720 N.E.2d 952. The majority provides the following examples of attendant circumstances that enhance the danger of a particular defect: "heavy vehicular or pedestrian traffic in the vicinity of the sidewalk, poor lighting that causes shadows to be cast over the sidewalk, or a foreign article or substance on the sidewalk." Opinion at ¶ 15. The totality of the circumstances of each case must be examined to determine whether the invitee had knowledge of a substantial defect. *Huey v. Neal*, 152 Ohio App.3d 146, 2003-Ohio-391, 787 N.E.2d 23, ¶ 10.

{¶ 21} In this case, Zuzan crossed over at least four times a stoop with a crack. He claims that the crack was a "pretty good sized crack" but that he did not see that crack when he crossed over the stoop because he was carrying heavy carpet and equipment and was taking pains not to bump or scratch the walls of the home he was installing carpet into. The majority contrasts this situation with one where there is heavy vehicular or pedestrian traffic. It states that heavy traffic

will cause a person's attention to be diverted from the road to the traffic so the person does not have an accident. But when someone is carrying heavy carpet and equipment into a home, that person's attention is also going to be diverted from the path he is crossing to the doors and walls of the home to ensure that he does not have an accident. Clearly, the person carrying the heavy material will not want to trip and fall into a wall. But just as clearly, someone crossing a street with heavy vehicular traffic will not want to trip and fall in the middle of the street.

{¶ 22} In a negligence case, issues should only be withdrawn from a jury in exceptional cases. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 423 N.E.2d 467. The question is whether all of the circumstances surrounding the accident in this case should properly be in the hands of a jury, not decided as a matter of law.

{¶ 23} Accordingly, the trial court's judgment should be reversed, and this cause remanded for further proceedings.