[Cite as *McFadden v. Discerni*, 2023-Ohio-1086.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| PERRY W. MCFADDEN, JR., | CASE NO. 2022-T-0019 |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| JOSEPH DISCERNI, et al., | |
| Defendants-Appellees. | Trial Court No. 2021 CV 00102 |

**O P I N I O N**

Decided: March 31, 2023
Judgment: Affirmed in part, reversed in part, and remanded

*Michael A. Ognibene*, 204 Monroe Street, N.W., P.O. Box 4273, Warren, OH 44482 (For Plaintiff-Appellant).

*Adam E. Carr* and *Eric K. Grinnell*, Carr Law Office, LLC, 5824 Akron-Cleveland Road, Suite A, Hudson, OH 44236 (For Defendants-Appellees).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Perry W. McFadden, appeals the trial court's judgment entry granting summary judgment in favor of Appellees, Joseph Discerni and Katherine Miskov, on McFadden's claim for negligence.

{¶2} On January 27, 2021, McFadden filed a Complaint against Discerni and Miskov. The Complaint alleged that he was an invitee to their house and, while leaving the residence, exterior steps collapsed causing him to sustain an injury. It alleged they were negligent in failing to maintain or repair the stairs and failing to warn him of the hazardous condition. Appellees filed an Answer on March 16, 2021.

{¶3}    Appellees filed a Motion for Summary Judgment on October 20, 2021, in which they argued that there was no genuine issue of material fact since there was no visible defect in the stairs or other indication that the stairs presented a danger.  They further contended that, if there was a dangerous condition, McFadden was aware of it, thus preventing a negligence claim through the open and obvious doctrine.  McFadden filed a Memorandum in Opposition, in which he argued that he had made Discerni aware of an issue with the stairs and Discerni led him to believe the steps would be inspected.

{¶4}    The following was established through deposition testimony.  McFadden and Discerni were friends for a number of years.  McFadden had been to Discerni and his wife, Miskov's, residence many times and, according to McFadden, he visited about once a week.  McFadden testified that he went to the house on August 3, 2019, because he had purchased corn, stating: "I was going there to bring --- just a visit, but at the time I bought a bunch of corn and gave some to them."  When arriving at the residence, McFadden used the outdoor staircase leading to the deck and a sliding glass door on the back side of the house.  He walked up the steps, gave the corn to Miskov, made "small talk," and then walked back down the steps.  At that time, a step "gave way."  He suffered a foot injury requiring surgery.  Discerni confirmed that he was aware McFadden had visited his home that day to bring corn and that the stair gave way during that visit.

{¶5}    McFadden testified that he had concerns with the step through which he fell on prior visits, observing that it had been "a little shaky" and when he stepped on it, "it kind of would rock back and forth * * * just a little bit * * * on the front and the back side of the step it would rock a little bit.  It wasn't sturdy."  He talked to Discerni about the stairs and said that he "ought to take a look at that step.  It might be getting a little squeaky on

2

us."  In his affidavit, McFadden stated that he used the steps because he believed that "by that time, * * * Discerni had the steps inspected and determined they were safe."

{¶6}   Discerni testified that the wooden deck and stairs where the incident occurred existed when he purchased the house in 2012 and he had not done maintenance on them.  Discerni testified that McFadden had "mentioned" the steps to him in the past, stating that he should check them.  Discerni did not believe the issue needed to be resolved, the steps did not seem loose, and he had no intention of having them inspected.  He believed McFadden may have caused the stairs to creak because "he is a big guy."  Discerni stated that he had no knowledge they would break, used the stairs while carrying his son, and had a party with people on the deck three months prior and had no problems.

{¶7}   An affidavit of Jon Pina, a "safety professional," was attached to the response to summary judgment.  Pina observed that the steps appeared to be "badly weathered with cracks and peeling lumber" and noted that the hazardous nature of the steps would be apparent to building inspectors or contractors.

{¶8}   On February 11, 2022, the court issued a Judgment Entry granting summary judgment in favor of appellees.  In the entry, the court found that even if the creaky stair gave rise to a hazardous condition requiring appellees to warn guests, "the duty to warn was obviated by the open and obvious doctrine."  It found it "would be unfair to charge Defendants with constructive knowledge of the danger, while at the s[a]me time absolving Plaintiff of taking appropriate measures to protect himself based upon that same knowledge."

{¶9}   McFadden timely appeals and raises two assignments of error.

3

Case No. 2022-T-0019

{¶10} "[1.]  The trial court erred in granting defendants-appellees' motion for summary judgment where genuine issues of material fact exist as to whether the condition causing plaintiff-appellant's injuries was an open and obvious danger.

{¶11}  Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶12} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision."  *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶13}  "[I]n order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom."  *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 8.  "While negligence actions involve both questions of law and fact, the existence of a duty is in the first instance a question of law for the trial court."  *Frano v. Red Robin Internatl., Inc.,* 11th Dist. No. 2008-L-124, 181 Ohio App.3d 13, 2009-Ohio-685, 907 N.E.2d 796, ¶ 65, citing *Clemets v. Heston*, 20 Ohio App.3d 132, 485 N.E.2d 287 (6th Dist.1985) at paragraph one of the syllabus.

4

Case No. 2022-T-0019

{¶14}  In his first assignment of error, McFadden argues that whether the danger was open and obvious is a factual determination that should not have been decided at this stage of the proceedings since whether a creaky step poses a danger is a fact-driven inquiry best decided by a jury.  He also contends that even if the stairs presented an open and obvious danger, attendant circumstances prevent the application of the doctrine.

{¶15}  Under the open and obvious doctrine, the "nature of the hazard itself is sufficient warning" and no duty is imposed on the homeowner because he "may reasonably expect individuals encountering the condition to discover the danger and take appropriate measures to protect themselves from it."  *Watson v. Bradley*, 2017-Ohio-431, 84 N.E.3d 97, ¶ 18 (11th Dist.), citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992); *accord Costilla v. LeMC Enterprises*, 11th Dist. Portage No. 2003-P-0116, 2004-Ohio-6944, ¶ 12.  "A finding that the open and obvious doctrine applies would, by itself, warrant a grant of summary judgment since it negates any duty owed by the defendant."  *Hamrock v. Ams*, 2020-Ohio-1335, 153 N.E.3d 506, ¶ 25 (11th Dist.).  "Whether a person owes a duty of care to protect individuals against an open and obvious danger is generally for a court to decide.  However, whether the hazard in a case is open and obvious is a fact-driven issue that 'may involve a genuine issue of material fact, which a trier of fact must resolve.'"  *Gaffney v. Soukup*, 11th Dist. Geauga No. 2016-G-0104, 2017-Ohio-7362, ¶ 16, quoting *Henry v. Dollar Gen. Store*, 2nd Dist. Greene No. 2002-CA-47, 2003-Ohio-206, ¶ 10.

{¶16}  The open and obvious test "properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it."  *Armstrong v. Best Buy Co.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 13.

5

It has been held, however, that "[e]vidence that a plaintiff actually knew of the allegedly dangerous condition can be used in evaluating the open and obvious doctrine." *Mayhew v. Massey,* 2017-Ohio-1016, 86 N.E.3d 758, ¶ 17 (7th Dist.). The doctrine has been applied not only where a person would be expected to discover a hazard, but also where the plaintiff "had actual knowledge of a particular hazard or condition." *St. Germain v. Newell*, 3d Dist. Marion No. 9-5-14, 2015-Ohio-3713, ¶ 18-24 (rejecting appellant's claim that a loose railing was "not objectively open and obvious" when he knew of the railing's condition). *Stewart v. AMF Bowling Ctrs., Inc.,* 3d Dist. Hancock No. 5-10-16, 2010-Ohio-5671, ¶ 16-17. This court has found that "when a guest admits 'knowing of the danger, summary judgment is easily granted. Clearly, the danger is open and obvious when the invitee admits to having had actual knowledge of the danger prior to being injured by that danger.'" *Gaffney* at ¶ 18, citing *Zuzan v. Shutrump*, 155 Ohio App.3d 589, 2003-Ohio-7285, 802 N.E.2d 683, ¶ 6 (7th Dist.).

{¶17} Here, there is a genuine issue of material fact of whether McFadden knew there was a *danger*. Even though McFadden knew a step was "creaky," and had mentioned it to Discerni on a prior visit, it is not clear whether he knew the steps were "dangerous;" he only knew one of them was "creaky" and "a little shaky" when he used it. It is not, on this record, "open and obvious" that a creaky or shaky step is dangerous or that McFadden knew it to be. He only suggested that Discerni have the steps looked at, but there is no clear evidence that he found the steps "dangerous" or that he stopped using them. Contrary to McFadden's argument otherwise, there is also no evidence that Discerni or Miskov perceived the steps as dangerous because they testified to frequently using them while holding their baby.

6

{¶18} In this instance, the facts demonstrate that reasonable minds could reach different conclusions about the obviousness of the danger and whether McFadden had "actual knowledge" of a danger. A reasonable factfinder could conclude that he did not perceive the steps as "dangerous" because he continued using them after hearing them creak weeks earlier. Similarly, a reasonable factfinder could alternatively conclude that he did perceive the steps as "dangerous" because he told Discerni on a prior visit that he had "concerns" about the steps. Lastly, a reasonable factfinder could also conclude that the steps were not openly and obviously "dangerous" because the homeowners frequently used them and did not consider them a "danger". However, those are questions of fact for the jury.

{¶19} This is not to suggest that every case involving the open and obvious doctrine survives a motion for Summary Judgment. This case is heavily fact-driven and involves a genuine issue of material fact, which a trier of fact must resolve. McFadden's "actual knowledge" of the steps' condition and whether a reasonable person exercising ordinary care in the same circumstances would perceive the steps as a "danger" are questions of fact for a jury. In other words, whether McFadden had "sufficient warning" either from the steps' condition or from his knowledge of the steps is a genuine issue of material fact. Summary Judgment was not proper because there are genuine issues of material fact as to whether the steps were "open and obviously" "dangerous" and whether McFadden had "actual knowledge" that the steps were "dangerous."

{¶20} Appellant's first assignment of error is with merit. We reverse and remand to the trial court consistent with this opinion.

{¶21} "[2.] The trial court erred in not finding plaintiff-appellant Perry McFadden

7

to be an invitee upon defendants-appellees' premises at the time of the injury."

{¶22} "A social guest is someone the owner or occupier of land invites onto the property for the purpose of social interaction." *Gaffney*, 2017-Ohio-7362, at ¶ 12. By contrast, the Ohio Supreme Court "has defined a business invitee as 'one rightfully on the premises of another for the purposes in which the possessor of the premises has a beneficial interest.'" *Bishop v. Nelson Ledges Quarry Park, Ltd.,* 11th Dist. Portage No. 2004-P-0008, 2005-Ohio-2656, ¶ 34, quoting *Sheibel v. Lipton* (1951), 156 Ohio St. 308, 102 N.E.2d 453, at paragraph one of the syllabus.

{¶23} "A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *Sorensen v. DeFranco*, 11th Dist. No. 2013-L-038, 2013-Ohio-5829, 6 N.E.3d 664 at ¶ 40, citing *Scheibel* at paragraph three of the syllabus.

{¶24} In the present matter, we find that the record supports a conclusion that McFadden was present at the property as a social guest for the purpose of social interaction rather than an invitee. The testimony demonstrated unequivocally that McFadden was friends with the appellees and visited their home on a frequent basis. McFadden testified that, on the particular occasion in question, he had purchased corn and was bringing some to give to appellees. No testimony suggested that McFadden had brought the corn at the request of Miskov. While the gift of corn was a small benefit, it

8

was part of a social interaction with good friends which included small talk with Miskov while delivering the corn. In similar circumstances, where a benefit was construed in the context of a friendship, courts have found there is a social guest relationship. This court found that a longtime friend who was housesitting for a homeowner free of charge was a social guest rather than an invitee, observing that the house sitter was not on the property "for any business purpose." *Sorensen* at ¶ 42; Accord *Saliba v. Miley*, 7th Dist. Noble No. 21 NO 0481, 2021-Ohio-3638, ¶ 22-23 (social guest relationship existed where plaintiff "had been stopping by to have Michael weld an item for him and check on an electrical issue," and the parties were friends who spent time at each other's houses socially and did welding and electronic jobs for each other without pay).

{¶25} We observe that while invitees have been characterized as "business visitors," an invitee relationship has been found in some circumstances that would not typically be characterized as a "business" relationship. For example, this court has held that where a brother-in-law was visiting the home to give him a ride to a doctor's appointment, an invitee relationship existed. *Fabian v. May*, 11th Dist. Trumbull No. 2020-T-0071, 2021-Ohio-2882, ¶ 8; *Bullucks v. Moore*, 1st Dist. Hamilton No. C-020187, 2002-Ohio-7332, ¶ 8 (an issue of fact existed as to whether the plaintiff was an invitee where the purpose for visiting the home was to take her mother to the store). We find these cases distinguishable and they do not support a holding that an invitee relationship existed in the present case. In those cases, there is a lack of evidence to show a social interaction during the visit and the invitee was present for the express purpose of providing the benefit of the ride. Here, although a "benefit" was bestowed, McFadden was giving an unrequested gift as part of his social relationship with the defendants and

9

stated that his purpose for being there was to "visit." In circumstances where a minor benefit that was not requested by the homeowner was given, it has been determined that visitor was not an invitee. *Karlovich v. Nicholson*, 11th Dist. Lake No. 98-L-097, 1999 WL 960583, *4 (Sept. 30, 1999) (where the plaintiff provided care for horses at the property and she was not asked to perform this activity, her actions were "admittedly voluntary with no expectation of compensation or other return," and, thus, she was not an invitee); *Scherting v. St. Patrick's of Heathersdowns Parish*, 6th Dist. Lucas No. L-95-239, 1996 WL 38811, *2 (Feb. 2, 1996) (plaintiff's intention to perform volunteer tasks at a school did not make her an invitee since there was nothing to suggest she provided this assistance at the request of the defendant and it was "too attenuated to classify her as a business invitee"). Further, if we accepted a broad definition of bestowing a "benefit" upon the landowner, it could be maintained that even visiting and talking with a friend falls under this term, which would eliminate the social guest classification entirely. *Reddick v. Said*, 11th Dist. Lake No. 2011-L-067, 2012-Ohio-1885, ¶ 41 ("a social guest is thought to be on the premises presumably giving the possessor some personal benefit, intangible though it may be. *Ard v. Fawley,* 135 Ohio App.3d 566, 571, 735 N.E.2d 14 (3rd Dist.1999).") We decline to apply this status as narrowly as McFadden requests and determine that he was a social guest.

{¶26} The trial court did not commit error in finding McFadden to be a social guest at the time of the injury.

{¶27} McFadden's second assignment of error is without merit.

10

Case No. 2022-T-0019

{¶28} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of Discerni and Miskov, is affirmed in part, reversed in part, and remanded.

MARY JANE TRAPP, J., concurs,

MATT LYNCH, J., dissents with a Dissenting Opinion.

_____

MATT LYNCH, J., dissents with a Dissenting Opinion.

{¶29} I dissent from the majority's decision to remand this matter to the trial court for further proceedings based on a conclusion that the danger posed to McFadden was not open and obvious. Since a homeowner cannot reasonably be expected to warn a social guest of a condition that the homeowner did not consider dangerous and of which the social guest was already aware, summary judgment was properly granted and it is unnecessary for this matter to be prolonged given that there are no remaining factual issues to be resolved.

{¶30} As the majority correctly concludes, McFadden was a social guest at the Discerni and Miskov residence. A homeowner owes a social guest the duty "to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." (Emphasis added.) Scheibel v. Lipton, 156 Ohio St.

11

308, 102 N.E.2d 453 (1951), paragraph three of the syllabus. There is no factual dispute that the only condition known to the homeowners, Discerni and Miskov, was exactly the one about which McFadden had advised them: the creaky or shaky step. At most, they could only be required under the law to advise him of that condition. However, they were only required to make such an advisement if they had reason to believe McFadden was not aware of such condition, which is obviously not the case here. Defendants have a duty to warn plaintiffs only of conditions they "had reason to believe the [plaintiffs] did not know about and could not discover." Ochall v. McNamer, 2016-Ohio-8493, 79 N.E.3d 1215, ¶ 71 (10th Dist.).

{¶31} It is evident McFadden was aware of the exact information he communicated to Discerni. There can be no reasonable question as to whether it was necessary to advise McFadden of the condition as a reminder or to ensure his knowledge since McFadden testified that he visited the house on a weekly basis. To hold otherwise would place an unreasonable requirement upon homeowners. It can hardly be said that we should develop a standard where a homeowner needs to advise a weekly guest that there might be a danger due to a condition that guest knows about because that guest is the only one who believes it presents a concern. Discerni did not believe there was a danger with the step while McFadden expressed that someone "ought to take a look at" it.

{¶32} Even presuming that the question about whether the condition of the step was actually known by the parties to be dangerous is subject to dispute, this does not change the analysis as to this issue. In these circumstances, although unique, common sense dictates the appropriate outcome. A homeowner does not owe a duty to a social

12

Case No. 2022-T-0019

guest to investigate potential sources of danger or insure the safety of the guests on their premises; their duty relates to ensuring that visitors are aware of known conditions. Estate of Vince v. Estate of Smallwood, 11th Dist. Trumbull No. 2005-T-0017, 2006-Ohio-1697, ¶ 21, citing Scheibel at paragraph two of the syllabus. McFadden was clearly and unquestionably aware of the same facts as Discerni and Miskov. What more is there to be determined at trial? If the step is found not to be a dangerous condition, then there was no duty to warn McFadden. If it is found to be a dangerous condition, it does not follow that the defendants knew of its danger such that they could have advised McFadden. Presuming we cannot determine the danger of the step based on the facts before us, it follows that we cannot impart Miskov and Discerni with knowledge of such a danger (or reasonable belief of a danger) while simultaneously finding that McFadden did not have any knowledge of such danger.

{¶33} In any event, Discerni and Miskov are simply not required to transmit information of which they are unaware to a social guest. "Liability in premises liability cases stems from superior knowledge of the condition of the premises." (Citation omitted.) Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn.2004). Where there is no superior knowledge, it is unreasonable to hold the defendants liable. See Rutkai v. Freeland, 9th Dist. Summit No. 24267, 2008-Ohio-6440, ¶ 45 (there was no breach of a duty of care to a social guest where there was a lack of evidence to show that the defendant had superior knowledge about the danger posed to plaintiff). The evidence does not indicate that the defendants had any superior knowledge of the danger. Discerni testified that he did not believe there was a danger and the defendants continued to use the steps, transporting their child up these steps, after McFadden advised them of the

13

creaky sound. It has been held that a defendant met his burden in regard to a social guest where he warned the plaintiff "regarding the only situation that he believed might be dangerous." Id. at ¶ 41. Even where the danger of the situation is unclear, the property owner is absolved of liability where the plaintiff is aware of the potential danger.

{¶34} The majority focuses primarily on the danger posed for the purposes of applying the open and obvious doctrine. It concludes that while the step's condition was known to McFadden, the danger this condition presented was not known. It is not necessary to determine whether there was an open and obvious danger since, as noted above, there was no violation of the duty owed to a social guest in these circumstances. Since McFadden actually knew of the step's condition, we do not need to find that there was an open and obvious danger.

{¶35} Nonetheless, too fine of a line is being drawn as to when a condition presents an open and obvious danger. When a person observes darkness or ice, they are presumed to know that some danger is associated with these conditions, even if the danger is associated with failing to proceed with caution rather than solely due to the condition itself. Although McFadden did not know exactly what outcome might occur if he used the step, he knew there was a squeak when he utilized it and in fact had some concern with the condition such that he advised the homeowners of the need to investigate it further. It has been held that "'awareness of a general unsafe condition'" and recognition of a "potential for danger" in a condition satisfies the open and obvious doctrine. (Citation omitted.) Cornell v. Mississippi Lime Co., 95 N.E.3d 923, 2017-Ohio-7160, ¶ 70-71 (7th Dist.).

14

{¶36} This situation can be compared to those in which a party claims "a defect was so insubstantial so as to go unnoticed upon entering a premises and then conversely claim[s] that the condition was unreasonably dangerous so as to impose liability for a fall occurring upon leaving the premises." Such a claim has been found to lack merit. Zuzan v. Shutrump, 155 Ohio App.3d 589, 2003-Ohio-7285, 802 N.E.2d 683, ¶ 12 (7th Dist.). McFadden cannot successfully advance an argument that the danger was not known to him but that it was also simultaneously known to the homeowners for the purposes of imposing liability.

{¶37} Based on the foregoing, and when construing the evidence in a light most favorable to McFadden, there are no factual issues to resolve. Under the majority's interpretation, the homeowners must undergo the expense of continued litigation and a trial because the plaintiff was injured on a step that he believed to pose a risk yet chose to use anyway. Since the homeowners unquestionably did not have any superior knowledge of the condition which they failed to provide to McFadden, there was no breach of a duty that could justify a verdict in his favor. For these reasons, I respectfully dissent.

Case No. 2022-T-0019